UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WILLIAM CARSON,<br><br>        Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:19-cv-00868-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

      This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 8).

      At a hearing on August 6, 2020, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

///

///

1

**I.     Whether the ALJ erred by failing to identify a significant number of jobs.**

Plaintiff first challenges the ALJ's decision by arguing that "[t]he ALJ committed harmful error by finding Mr. Carson 'not disabled' by failing the duty to identify a 'significant number' of jobs that Mr. Carson could perform in the national economy at step Five of the sequential evaluation." (ECF No. 19 at 12).

At step five, the ALJ must determine whether there are jobs available for the claimant in the national economy considering the claimant's age, education, work experience, and residual functional capacity. *See* 20 C.F.R. § 416.920(a)(4)(v).

Here, the ALJ found that Plaintiff has no past relevant work, and that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 31-32.) The ALJ explained:

> If the claimant had the residual functional capacity to perform the full range of medium work a finding of not disabled would be directed by Medical-Vocational Rule 203.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base I asked the vocational expert whether jobs exist in the national economy for an individual with the claimants age education work experience and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:
>
> | Job Title | DOT Number | Exertional Level | Skill Level; Number of Available Jobs in the US Economy |
> |---|---|---|---|
> | Cleaner II | 919.687-014 | Medium | Unskilled, SVP 1; 6,297 |
> | Box truck washer | 529.687-018 | Medium | Unskilled, SVP 1; 6,472 |
> | Machine cleaner | 699.687-014 | Medium | Unskilled, SVP 2; 5,583 |
>
> With the exception of the limitation of noncomplex and routine tasks with one to three-step instructions not on production rate pace based on the vocational experts expertise and experience I determine that the vocational expert's testimony is consistent with the information contained in the DOT (BI lE and Hearing Testimony) (SSR 00-4p).
>
> Based on the testimony of the vocational expert I conclude that considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of not disabled is therefore appropriate under the framework of the above-cited rule.

(AR 32.)

Thus, the ALJ determined that 18,352 jobs in the national economy was a significant number of jobs.

Plaintiff argues that this minimal number of jobs, without a discussion of the regional number of jobs, does not constitute a "significant" number of jobs in the national economy. (ECF No. 19 at 12.) The Court agrees.

The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012). It has, however, found "a comparison to other cases ... instructive." *Id*. The Ninth Circuit has further made clear that "[t]he statute in question indicates that the 'significant number of jobs' can be either regional jobs (the region where a claimant resides) or in several regions of the country (national jobs)." *Id.* at 1206 (emphasis in original) (citing 42 U.S.C. §§ 423(d)(2)(A)). Upon finding "either of the two numbers 'significant,'" the Court "must uphold the ALJ's decision." *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012).

In *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014), the Ninth Circuit concluded that 25,000 nationwide jobs constitutes a significant number but found this to be a "close call." In so holding, the court noted that the Ninth Circuit had previously found 1,680 jobs to be insignificant, *id.* at (citing *Beltran v. Astrue*, 700 F.3d 386, 290 (9th Cir. 2012)), and that the Eighth Circuit had found 10,000 nationwide jobs to be significant, *id.* (citing *Johnson v. Chater*, 108 F.3d 178- 180 (8th Cir. 1997)).

The Ninth Circuit has not stated a minimum number of jobs in the national economy necessary to constitute a significant number. Cases looking at numbers less than 25,000 vary somewhat widely on how many jobs need to exist to be considered "significant." *Compare, e.g., Baker v. Comm'r of Soc. Sec.*, 2014 WL 3615497, at *8 (E.D. Cal. July 21, 2014) (14,500 national jobs insignificant); *Valencia v. Astrue*, 2013 WL 1209353 at *18 (N.D. Cal. Mar. 25, 2013) (14,082 national jobs insignificant); and *Lora M. v. Comm'r of Soc. Sec.*, 2019 WL 2130303, at *4 (8,500 national jobs insignificant) with *Aguilar v. Colvin*, 2016 WL 3660296 (C.D. Cal. July 8, 2016) (11,850 national jobs and 1,080 regional jobs significant); *Evans v. Colvin*, 2014 WL

3845046, at *2-3 (C.D. Cal. Aug. 4, 2014) (6,200 national jobs significant); *Montalbo v. Colvin*, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (12,300 national jobs significant in light of discretion afforded ALJ in determining whether number of jobs available is significant).

In *Lemauga v. Berryhill*, 686 Fed. App'x 420, 422 (9th Cir. 2017) (unpublished disposition), the Ninth Circuit held that the ALJ erred in determining that 1,530 jobs in the region was significant where the size of the region considered was not specified. In so holding, the Ninth Circuit noted that the government did not argue that the 12,600 national jobs represented a significant number, but that the court had never found a similar number to be significant. *Id.*

In *Little v. Berryhill*, 690 Fed. App'x 915, 917 (9th Cir. 2017) (unpublished disposition), the Ninth Circuit stated: "[O]nly 18,500 jobs existed nationally and 195 regionally. The district court correctly held that 195 jobs regionally are not significant. This court has held that whether 25,000 jobs nationally is significant is 'a close call.'" *Id.* (citing *Gutierrez*, 740 F.3d at 529).

In the present case, the vocational expert testified that there are 18,352 jobs in the national economy that Plaintiff could perform. After a comparison with other cases, discussed above, the Court finds that the ALJ erred in determining that 18,352 jobs in the national economy is a significant number of jobs.

The vocational expert did not state how many jobs are available in the regional economy, and the ALJ did not determine whether there are a significant number of jobs in the regional economy, or whether combined consideration of the regional and national job numbers would yield a significant number of jobs. *See, e.g., Aguilar v. Colvin*, 2016 WL 3660296, at *3 (C.D. Cal. July 8, 2016) (over 10,000 national jobs and over 1,000 regional jobs significant, relying on a consideration of both figures); *Evans v. Colvin*, 2014 WL 3845046, at *1 (C.D. Cal. Aug. 4, 2014) (6,200 national jobs and 600 regional jobs significant, relying on a consideration of both figures).

Defendant argues that the vocational expert's testimony is alone sufficient to provide substantial evidence that a significant number of jobs exist in the national economy. (ECF No. 20 at 6.) In support of this argument, Defendant cites *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019), and *Ford v. Saul*, 950 F.3d 1141 (9th Cir. 2020).

Both *Biestek* and *Ford* are inapposite and do not assist Defendant. In both cases, at issue was whether the vocational expert's testimony alone, without the source material underlying the expert's opinion, was substantial evidence regarding the number of jobs that exist in the national economy. *See Biestek*, 139 S. Ct. at 1152, 1157; *Ford*, 950 F.3d at 1158-60. Neither case addressed the question at issue here—whether the number of jobs that exist in the national economy are sufficient to constitute a "significant number" of jobs.

In sum, after engaging in a comparison with other cases, the Court finds that 18,323 cases in the national economy is not a "significant number." Accordingly, the Court finds that the ALJ erred at step five by determining that there are a significant number of cases in the national economy that Plaintiff can perform.

However, it is not clear from the record whether an individual with Plaintiff's limitations would be able to perform additional occupations, and whether the addition of any additional occupations would constitute a significant number of jobs. The vocational expert only testified that the three jobs provided were representative occupations. Thus, the Court will remand to the ALJ to obtain additional testimony from a vocational expert and make a finding as to whether significant number of jobs exist with the benefit of that additional testimony.

**II. Whether the ALJ erred by failing to find Plaintiff's major depressive disorder, anxiety disorder, and conduct disorder "severe" impairments at step two.**

Plaintiff argues that the ALJ committed harmful error by failing to account for Plaintiff's "diagnosed 'medically determinable impairments' of major depressive disorders, anxiety disorders and conduct disorder as 'severe' impairments at step two of the sequential evaluation." (ECF No. 19 at 15.)

At step two, the ALJ is to "consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled." 20 C.F.R. § 416.920(a)(4)(ii).

Here, the ALJ found that Plaintiff "has the following severe impairments: borderline intellectual functioning and degenerative joint disease of the bilateral knees." (AR 22.) The ALJ

also found that Plaintiff "has the following impairments that are not severe: kidney stones; major depressive disorder; anxiety disorder; and conduct disorder." (*Id.*) As to the mental impairments, the ALJ stated:

> As to the claimant's mental impairments related to major depressive anxiety and conduct disorders a consultative examination in December 2015 diagnosed the claimant with borderline intellectual functioning disorder discussed further below (B4F/5). Further a mental status examination in September 2017 revealed the claimants mood was anxious and depressed. Further the claimant was irritable and had anger outbursts (B13F/26). The claimant was diagnosed with major depressive disorder anxiety disorder and other conduct disorders in January 2018 (B13F/2). No aggressive treatment was recommended or anticipated for this condition. Further the claimants mental health treatment is non-durational and as evinced above the mental status examinations have been relatively normal (B4F and B13F). Additionally, I find the claimant presented fine at the hearing, smiled, and was pleasant, despite complaints of mood swings, anger, and an inability to get along with others (Hearing Testimony). Accordingly, I find the claimant's mental medically determinable impairments other than borderline intellectual functioning are non-severe.

(AR 23.)

Despite finding that the Plaintiff's depression, anxiety, and conduct disorders were non-severe, the ALJ went on to evaluate these impairments in the determination of residual functional capacity. (AR 25, 27-31.) The ALJ found: "The claimant is limited to performing noncomplex and routine tasks with one to three-step instructions not on a production rate pace. The claimant can respond appropriately to usual work situations, such as attendance and safety. Finally, the claimant can adapt to changes in a routine work setting." (AR 25.)

Thus, the ALJ included the mental health impairments in determining Plaintiff's residual functional capacity. Accordingly, even assuming that the ALJ erred at step two in finding some of Plaintiff's mental impairments to be non-severe, the error was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity).

### III. Whether the ALJ erred by failing to fully and fairly develop the record.

Plaintiff argues that because he is "a cognitively disabled claimant, the ALJ committed

legal error by failing the heightened duty to ensure that the record was fully and fairly developed, and his interests considered." (ECF No. 19 at 21-22.) He contends that the ALJ erred by failing to conduct an appropriate inquiry into his psychiatric limitations and specifically that the ALJ had a duty to reach out to Plaintiff's treating physicians who had diagnosed Plaintiff's medically determinable impairments of major depressive, anxiety, and conduct disorders. (*Id.* at 24.)

In *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001), the Ninth Circuit held:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts. . . . The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect [their] own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.

*Id.* at 1150 (citations and quotation marks omitted).

In the present case, Plaintiff was represented by competent counsel before the ALJ. Further, there was abundant medical evidence in the record, including treatment notes and multiple opinions from both examining and non-examining psychiatrists. (*See, e.g.,* AR 121, 134, 366.) Finally, the evidence in the record was not ambiguous. Under these circumstances, there was no duty for the ALJ to further develop the record. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (rejecting assertion that ALJ had duty to recontact examining physician to further develop the record—"[g]iven that the ALJ had years of Ford's mental health records and multiple opinions from non-examining psychiatrists to inform her decision, this duty [to further develop the record] was not triggered"); *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("The ALJ had no duty to request more information from the two physicians [regarding the plaintiff's ability to work where one physician thought the plaintiff could not work at all and the other physician thought the plaintiff could do sedentary work]. It appears from the record that substantially all of their medical records throughout the time they treated McLeod were before the ALJ. There was nothing unclear or ambiguous about what they said.").

**IV.     Conclusion**

For the foregoing reasons, the Court remands this case to the ALJ for the limited purpose

of reevaluating step five, with the assistance of a vocational expert as necessary, to determine whether there are jobs available in significant numbers in the regional and/or national economy that Plaintiff is capable of performing.

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision.

IT IS SO ORDERED.

Dated: __**August 25, 2020**__           /s/ Erica P. Grosjean
                                                        UNITED STATES MAGISTRATE JUDGE